(93 Misc. Rep. 203)

### BAXTER v. DE KAY.

(Supreme Court, Equity Term, Cattaraugus County. January, 1916.)

1. LANDLORD AND TENANT ⊕═92—LEASE—OPTION TO PURCHASE—WAIVER.
    Plaintiff leased defendant a building and premises, the description being "one large frame, two-story building * * * and the land adjacent thereto, being the land on which the building stands, and being all the land between the pond on the east and the Olean creek on the west." The land was an embankment, the sides of which sloped to the pond level on one side and the creek level on the other; there being strips of land which plaintiff did not own, between the face of the embankment and the creek on the one side, and between the opposite face and the pond on the other. The lease gave defendant an option to purchase the premises at any time during the term. On the day the lease expired defendant notified plaintiff that he would neither lease for another year nor exercise the option, but would occupy as a tenant for another month at the same rent, whereupon plaintiff offered the land for sale to the city of Olean, to be accepted within eight days. During that period defendant served plaintiff with notice of an election to exercise the option. Some months thereafter, the city having failed to purchase, plaintiff tendered a deed of the premises to defendant and demanded the option

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

price; but defendant refused to accept until plaintiff should furnish good title to the strips below the embankment. Plaintiff then demanded possession, and upon defendant's refusal to vacate brought ejectment, to which defendant answered lawful possession under a contract to purchase, and demanded specific performance or damages in lieu. *Held* that, plaintiff having relied on defendant's waiver of his option by giving an option to the city, defendant was estopped from thereafter exercising such waived option.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. ⊜═92.]

2. LANDLORD AND TENANT ⊜═92—LEASE—PURCHASE OPTION—WAIVER—NEW OFFER—EFFECT.

Plaintiff's tender of the deed to defendant several months after the city's failure to purchase was not a recognition and reinstatement of defendant's waived option, but was a new and independent offer to sell, which, being without consideration and not accepted by defendant, did not constitute a contract for the sale of such land.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. ⊜═92.]

3. LANDLORD AND TENANT ⊜═92—LEASE—PURCHASE OPTION—DESCRIPTION—CONSTRUCTION.

There being a recital in such lease that the building was to be used by defendant for the manufacture of emery wheels and razor hones, for which there could be no need of the strips below the embankment, and defendant knowing when he accepted the lease that plaintiff did not own the strips, and never having attempted to use or occupy them, the description in the lease must be held as intended simply to locate and identify the building and its necessary surrounding land, and not as accurately and definitely describing by boundaries the quantity of land leased.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. ⊜═92.]

Action of ejectment by Elizabeth M. Baxter against Harry M. De Kay; defendant demanding specific performance of a contract to sell the land in question. Finding for plaintiff for possession, with damages for use and occupation.

George A. Larkin, of Olean, for plaintiff.
Dana L. Jewell, of Olean, for defendant.

BROWN, J. On the south side of State street, in the city of Olean, a strip of land on substantially the street level, about 32 feet wide, extends southerly from the street to the Pittsburgh, Shawmut & Northern Railroad lands, its northwestern corner being about 121½ feet east of the west face of the east abutment of the bridge over the Olean creek. From the eastern edge of this strip the ground slopes rapidly to the east to the water of a pond or basin that extends from 10 to 15 feet from the street on the north to about the same distance from the railroad lands on the south; the western side of the pond forming practically a straight line from the street to the railroad, and the top of the strip of land being about 10 or 12 feet above the level of the water in the pond. From the western edge of this strip the ground slopes rapidly to the west to the waters of Olean creek, the top of the strip being about 20 feet above the ordinary level of the creek; the land between the strip and the creek being very narrow at the south-

ern end, only a few feet in width east and west, of irregular shape, of varying widths, and at the north end being 121½ feet wide on the street, all being lowland, but very little above the level of the creek, and at times of high water entirely flooded, never having been occupied, and substantially covered with weeds, brush, and flood trash. From the street surface down to the low-lying land is a drop of about 20 feet, very steep and precipitous. The strip of land thus situated constitutes an embankment of about 32 feet in width, extending from the street on the same level south to the railroad lands, having upon its northern end, and but a few feet from the street line, a two-story, frame building, standing in about the center of the strip, such building being 24 feet wide east and west and 80 feet long north and south, with its southern end about 100 feet from the railroad lands. The plaintiff is the owner in fee of the strip of land or embankment above described, which, together with the building, had been occupied by her husband for years and known as the seed house premises; but the plaintiff does not own the low-lying land between this strip or embankment and the Olean creek on the west.

With the premises in the above-described condition and situation, the plaintiff, on the 3d day of January 1913, entered into a written agreement under seal with W. A. Chamberlain, whereby she leased to Chamberlain "one large frame, two-story building located on East State street, between the two bridges that cross the two portions of Olean creek, and the land adjacent thereto, being the land on which the building stands, and being all the land between the pond on the east and the Olean creek on the west," for one year from February 1, 1913, at $18 per month, in which lease plaintiff granted to Chamberlain "the option to purchase at any time during the term of this lease the building and premises covered by this lease at the price of $2,000, and hereby does agree to give to the parties a clear and satisfactory title to said premises." On January 16, 1913, Chamberlain assigned the lease to Allen Razor Hone Company, a copartnership consisting of F. C. Allen and defendant, and such copartnership entered into possession of the building and the lands of the plaintiff adjacent thereto between the pond and the Olean creek, continuing such occupation until November 17, 1913, when F. C. Allen assigned all his interest in the lease to the defendant, who continued in possession of such lands so occupied by such copartnership, is now in such possession, using the same for the manufacture of razor hones, and has never been in possession or occupation of the lands lying between the embankment and the Olean creek. On January 3, 1914, the defendant stated to the plaintiff that he would not purchase the premises under the option clause in the lease; that he was going to vacate the premises, would not renew the lease for a year, but would occupy as tenant for an additional month at the same rental.

On January 23, 1914, the plaintiff, relying upon the statement of the defendant that he would not purchase the premises under said option clause, entered into a contract for the sale of all the lands between the main channel to the east of the pond and the Olean creek above referred to, and the street on the north and the railroad to the south,

for the sum of $4,000, to the city of Olean, upon condition that the city of Olean gave notice of the acceptance of such offer on or before March 1, 1915; such contract or option evidently covering the lands described in the lease owned by the plaintiff and several hundred feet of land on State street, including the pond. On January 28, 1914, the defendant, having learned of the apparent necessity of the city of Olean acquiring the lands described in the lease held by him for flood abatement purposes, served a written notice on the plaintiff that he elected to purchase the same under the option clause in the lease and was ready to pay the $2,000 upon delivery of a deed therefor. In August, 1915, the city of Olean having failed to purchase under its contract of January 23, 1914, the plaintiff tendered a deed to the defendant of the land as described in his lease and demanded the sum of $2,-000, whereupon the defendant declined to make such payment until the plaintiff furnished a good title to the lands lying between the embankment and the Olean creek, claiming that she had agreed to convey all the land between the pond and the creek, that she owned only to the west edge of the embankment, and that her deed then tendered conveyed no title to lands between the embankment and the creek. Plaintiff then demanded possession of the premises, and, defendant refusing to vacate, plaintiff brought this action in ejectment to recover such possession. Defendant denies plaintiff's right to possession, and alleges that he is in possession under the contract to sell, consisting of plaintiff's option in the lease and his written acceptance thereof, alleges plaintiff's want of title to part of the lands that she has agreed to sell, and his damages, and demands judgment that plaintiff be required to specifically perform her contract to sell, or, in the event title cannot be given, that he be awarded his damages.

[1] It is difficult to see why the defendant's statement to the plaintiff on the 3d day of January, 1914, that he did not want to purchase the property, was not going to purchase, would not lease for another year, and was going to vacate the premises at the end of another month, did not constitute a complete waiver of his right to purchase under the contract. The plaintiff acted upon such waiver, and relied thereon on the 27th day of January, 1914, when she gave an option to purchase to the city of Olean. The plaintiff having relied upon such waiver when she gave the option to the city on the 27th day of January, 1914, the defendant was estopped from exercising his right to purchase under the option contained in his lease, on the 28th day of January, 1914. The right to purchase under the option having been waived by the defendant, and he being estopped from exercising such right on the 28th day of January, 1914, there could be no valid contract created by the option and its attempted acceptance on the 28th day of January, 1914. The contract relations of the parties had ended; as a matter of law there never was a valid contract to sell the premises which was binding on the defendant. His acceptance of an option to sell that he had waived would not constitute a contract to sell.

[2] The defendant insists, however, that the tender of a deed by the plaintiff in August, 1915, and a demand of the $2,000 in payment of the purchase price was a recognition of a contract to purchase, based

upon the option and its acceptance, and a reinstatement of the contract relations, binding the plaintiff to sell and convey. It is not believed that the tender of the deed had any such legal effect. That was an entirely new and independent transaction; it was not the re-creation of a dead contract, so as to put life and vitality into the waived option and its estopped acceptance. Whatever there was to the tender of the deed in August, 1915, was simply a new proposition by the plaintiff to sell, which the defendant then refused to accept. There was no acceptance in writing; the proposition was without consideration, and was not accepted by defendant, so as to become a contract to purchase on his part.

[3] If, however, it should be held that the tender of the deed in August, 1915, reinstated, or re-created, the claimed contract to sell on the part of the plaintiff, and to purchase on the part of the defendant, it is not believed that there was a contract to sell any land not owned by the plaintiff. It is extremely difficult to ascertain from the lease precisely what lands were contracted to be sold. The description, one large frame building "and the land adjacent thereto, being the land on which the building stands," if it ended with these words, would undoubtedly mean the building and the land adjacent thereto owned by the lessor sufficient for the reasonable use and occupation of the lessee, land sufficient to get about the building and needed for its use. The trouble seems to be in interpreting the meaning of the following words:

"And being all the land between the pond on the east and the Olean creek on the west."

The defendant contends that these words are solely to be considered as describing other and additional lands than those above referred to and defined. It is not believed that they will bear this construction. They certainly were not intended as describing and defining other and additional lands. It is believed that they were solely used for the purpose of identifying, not measuring, the lands previously referred to. The defendant would have the court strike out the word "being," and insert the word "also," and read the phrase as though it read "and also all the land between" the pond and the creek. It is believed that the words "and the land adjacent thereto, being the land on which the building stands," limit and define the lands leased as being those owned by the plaintiff, and that the words "and being all the land between the pond on the east and the Olean creek on the west" were used for the purpose of identifying or pointing out the leased land, rather than measuring the quantity of land. It is very clear that such an interpretation of this troublesome description fully expresses the intention of the parties. While there is no attempt to indicate a southern boundary of the leased premises, yet all parties concede that the south boundary of the lands owned by the plaintiff indicates the south boundary of the lands leased, and that the south boundary of the leased lands must be fixed by the manifest intention of the parties. If "and the land between the pond on the east and the creek on the west" is to be held as including the 121½ feet on the south side of the street which is not owned by the plaintiff, the same holding, to be consistent,

must include the lands of the Pittsburgh, Shawmut & Northern Railroad Company on the south of plaintiff's premises, for these railroad lands are between the pond on the east and the creek on the west. A line from the extreme southern edge of the pond, run due west to the creek, will include a strip of land between the pond and the creek more than 300 feet long, upwards of 30 feet wide at the western end, covering the railroad tracks of the Pittsburgh, Shawmut & Northern Railroad Company. As well might the defendant claim that the plaintiff contracted to sell the railroad lands as to claim the street frontage of 121½ feet.

The defendant conceding that the contract does not include the railroad lands, for the reason that plaintiff does not own and never intended to convey them, and the defendant knowing that plaintiff did not own and never intended to convey them, it is difficult to see why the defendant in good faith can claim that the contract covers 121½ feet fronting on the street. The situation as to the 121½ feet on the street is precisely the same as that of the railroad lands. The plaintiff does not own that piece of land. The defendant, when he acquired the lease by assignment from Allen in November, 1913, knew that the plaintiff did not own it, knew that the west line of the premises owned by the plaintiff was 121½ feet east of the west face of the east abutment of the bridge, knew that there were no lands to the west of the building that were owned by the plaintiff and leased with the building of sufficient width to permit of a driveway west of the building, and knew that the plaintiff's west line was substantially on the west edge of the embankment. The plaintiff leased the building, which was the important and vital subject of the lease; the land needed for a reasonable use thereof by the lessee was the top of the embankment; no possible use of the sides of this embankment from top down the slope to the water's edge was within the contemplation of the parties; neither the lessee nor any of his assignees ever did or could use or occupy, in the business carried on, any land other than the top of the embankment; it was intended to lease only sufficient land adjacent to the building to permit the use of the building for manufacturing purposes. In fact, the lease recites:

"The purpose for which this building is rented and used by said second party is for the manufacture of emery wheels and razor hones."

With such definite and fixed object of rental and property leased (the building), it is reasonable and just to hold that the description of the land in the lease was used for the purpose and with the intent of locating and identifying the building, and its necessary, usable, surrounding land, rather than to hold that the description was used for the purpose of accurately and definitely describing by fixed monuments or boundaries the quantity of land that would be conveyed upon an acceptance of the option, especially in view of the fact that there is nothing in the paper to indicate that the plaintiff intended to agree to convey land that she did not own or knew that she had agreed to convey land she did not own, and also that the defendant when he obtained title to the option knew that the plaintiff did not own the land

now claimed, and had good reason to believe that the plaintiff did not know that she had agreed to convey land that she did not own. The defendant has suffered no damage by the failure of the plaintiff to convey good title to the land between her west line and the Olean creek.

The mistaken use by the plaintiff of the words "all the land between the pond on the east and the Olean creek on the west" has been misunderstood by the defendant. The finding must be that the plaintiff did not agree in any event to convey any land that she did not own. While the finding must be that there was a waiver by the defendant of the privilege of purchasing, and that he was estopped from serving a notice of acceptance of such privilege, and that the judgment to be entered herein must award possession of the premises to the plaintiff, together with damages for the use and occupation thereof, findings will not be signed fixing the amount of such damages until the expiration of 10 days after the service of a copy of this memorandum upon the attorney for the defendant.

The plaintiff having expressed a willingness to convey what land she owns between the pond and the creek, it is but fair that the defendant have an opportunity to take the same at the option price. During such 10 days the defendant shall have the privilege of paying plaintiff the sum of $2,000 and interest from February 1, 1914, together with $51.68 insurance and taxes paid by plaintiff on the property, and accepting a conveyance of the land herein determined to be within the description contained in the lease. The careless use of language describing the lands in controversy being responsible for the litigation, no costs will be awarded the plaintiff.